State *v.* Bradley.

———— •◆• ————

STATE *vs.* LEONARD A. BRADLEY AND OTHERS.

The only ground of challenge to the array at common law is partiality, fraud, or some irregular or corrupt conduct on the part of the returning officers. But under the practice in this state there is so little opportunity for such acts, that there can rarely be any ground for a challenge to the array.

Whether there can be a challenge to the array on the ground that the statute under which the jurors were selected is unconstitutional: *Quære.*

Jurors are not public officers within the meaning of the constitution and law.

It follows, therefore, that where jurors have been selected for a year, and an act

State *v.* Bradley.

of the legislature is passed changing the mode of selecting jurors, and taking effect within the year, they may be superseded by the new jurors appointed under the act.

Also that a provision that jurors shall be not less than thirty years of age does not violate the provision of the constitution that " every elector shall be eligible to any office."

If a juror when in the discharge of his duties in court were to be regarded as an officer, yet an elector whose name is in the jury-box in his town, but has not been drawn out, would not be an officer.

A defendant would have no cause of complaint in the exclusion of a class of persons from the opportunity to become jurors, so long as the persons serving as jurors were legally qualified.

An information charged three defendants with a conspiracy to defraud a person of certain property, and that a forged deed was used as a means of accomplishing it, and that the property was obtained by the fraudulent means used. Held that the information did not charge the crime of forgery, nor that of getting goods by false pretenses, but the crime of conspiracy.

It is not necessary to a conviction under a charge of conspiracy to obtain certain real estate by fraud, that it should be proved that the property had value. It is enough if it was property.

INFORMATION for a conspiracy to defraud; filed by the prosecuting attorney of the city of Hartford in the police court of the city. The information contained three counts, the second one being as follows:—

That Leonard A. Bradley, Charles E. Gager, and Albert F. Olmstead, of said city of Hartford, at and within said city, on the first day of May, 1878, did, among themselves, wickedly and unlawfully conspire, confederate and agree to cheat and defraud Thomas C. Pease of Enfield in said county, out of certain property, to wit: a certain house and lot situated on Wethersfield Avenue, in said city of Hartford, which was then owned by said Pease, and worth two thousand dollars, by the following false, fraudulent, and wicked representations, pretenses, devices, and unlawful means, to wit: that they, the defendants, should induce said Pease to exchange said real estate with the defendants for certain real estate located in Granville, in the state of Massachusetts, and to convey by deed to them his said real estate, and that in order to accomplish said exchange and trade the defendants should falsely, fraudulently and wickedly pretend, represent and say to said Pease that said real estate in Granville was worth four thousand dollars, and was subject only

to a mortgage of fourteen hundred dollars; that the same was owned by James Lyon of said Hartford; that it was located only three or four miles from the village of Westfield; that twenty-five acres of said land was well covered with heavy wood and timber; that there was on the same a fine granite house, and other buildings, all of which together could not be built for four thousand dollars; that much of said land was excellent land for raising tobacco; that other portions of said land would produce in a year hay enough to keep thirteen head of cattle, and that part was excellent pasture land; and that said Lyon had well and truly executed to said Pease a good and sufficient deed and conveyance of said real estate situated in said Granville; whereas in truth said last named real estate was not worth four thousand dollars, and not more than said mortgage of fourteen hundred dollars which was an encumbrance thereon, and was located eighteen miles from said Westfield, as the defendants then and there well knew, and no part thereof was covered with heavy wood and timber, or was good tobacco land, or good pasture land, or would produce hay enough in one year to keep thirteen head of cattle, which the defendants then and there well knew; and whereas in truth said James Lyon did not own said last named real estate nor any part thereof, and had not executed and never did execute to said Pease any deed of the same; all which the defendants then and there well knew; and all the buildings thereon were not worth over one hundred dollars, and could be built for less than four thousand dollars, as they then and there well knew. And said Attorney says that, in pursuance of said conspiracy, combination and agreement among them formed and had as aforesaid, they, the said Bradley, Gager and Olmstead, did then and there falsely, fraudulently and wickedly pretend, represent and say to said Pease that said real estate, situated in Granville, Massachusetts, was worth four thousand dollars, and was encumbered by a mortgage of fourteen hundred dollars, that the same was located only three or four miles from said Westfield, and that there was thereon a fine granite house and other buildings, all of which together

could not be built for four thousand dollars, that much of the same was excellent land for raising tobacco, and much of the same was excellent pasture land, that said real estate would produce in a year hay enough to keep thirteen head of cattle one season, that said James Lyon owned said real estate situated in said Granville, and had well and truly executed a certain deed to said Pease of said real estate, which pretended deed the defendants then and there showed and delivered to said Pease as and for a good and sufficient conveyance to him of said last named real estate, but which deed said Attorney says was only a false, fraudulent, forged, and pretended instrument, and did thereby induce said Pease to execute, and said Pease did execute and deliver to them a good and sufficient deed of the said house and lot on Wethersfield Avenue in said Hartford; and said defendants, by the aforesaid false, fraudulent, and wicked pretences, representations, devices, and unlawful means, did then and there willfully cheat and defraud him, the said Thomas C. Pease, out of his real estate, situated as aforesaid, on Wethersfield Avenue in said city of Hartford, of the value of two thousand dollars; all which is a high crime and misdemeanor, and against the peace.

The defendants were bound over to the Superior Court, and in that court demurred to the information, but the court overruled the demurrer and ordered them to answer over. They then severally pleaded "not guilty," and the case came to trial before *Sanford, J.,* and a jury.

The defendants then filed the following challenge to the array:—

The defendants challenge the array of jurors summoned for the trial of the above cause, because they say—

1st. That under the statute laws of this state the justices of the peace, selectmen, constables, and grand jurors in each town of Hartford County met according to law on the first Monday of January, 1880, and chose by ballot the number of jurors provided by law, to serve until the first Monday of January, 1881; that said jurors so chosen have not resigned their office as jurors, but still continue to be the lawfully

State *v.* Bradley.

chosen jurors of said towns, and that the jurors upon this panel were not drawn or summoned from the jurors chosen as aforesaid, but were drawn and summoned from a body of so-called jurors chosen under the provisions of the eighty-second chapter of the public acts of 1880; and the defendants therefore say that the jurors upon this panel are not entitled to act as jurors in this cause.

2d. That said act of the General Assembly under which the jurors in this panel were chosen, drawn and summoned is unconstitutional and void, and the panel of jurors is therefore irregular and illegal and not qualified to serve in this cause.*

The court overruled the challenge, and the jury was empaneled from the jurors present with one talesman.

Upon the trial, the state having rested its case, the defendant offered in evidence a deed of the Granville property from Benajah H. Plato to James Lyon. The State's Attorney objecting to the deed on the ground that there was no proof of the signature, the defendants called Plato to prove his own signature, and asked him the single question whether the signature to the deed was his, to which he replied in the affirmative. The State's Attorney thereupon cross-examined him, and among other questions put the following: "Where is the property situated that is described in the deed? What is it, and what does it consist of?" To both of which the defendants objected, but the court in the exercise of its discretion overruled the objection, and permitted the Attorney to ask the questions and put in as a part of the evidence in the case the answers made by Plato.

---

*The statute referred to provided that all jurors should be not less than thirty years of age; that twice the number to which each town was entitled should be selected by the selectmen of such town in May of each year; that the judges of the Superior Court should at their annual meeting in June, appoint two persons who, with the sheriff of the county and clerk of the court for the county, should constitute a board of jury commissioners; that the commissioners should meet in July and examine the list of jurors named by the selectmen of each town in the county, and erase half the names, and that the persons whose names remained should be the jurors of such town for one year from the first day of September following. The act also provided that no verdict should be set aside solely on account of any irregularity in summoning the jury, nor for want of qualifications of any juror.

The defendants claimed and asked the court to charge the jury, that "the complaint charges the defendants with cheating and defrauding one Thomas C. Pease of certain property by means of certain false and fraudulent pretences, and the gist of the complaint is the cheating and defrauding by means of the representations and pretences alleged in the complaint." The court did not so charge, but charged as follows: "The complaint contains three counts. The first charges the crime of conspiracy to cheat and defraud Thomas C. Pease. The second count sets out all that is set out in the first count, and in addition sets out the unlawful means. The third count is for obtaining property by false pretences, but this count has been nolled by the Attorney. The first count is defective, and upon demurrer would have been held by the court insufficient, and no conviction should be had upon it, and your inquiries, therefore, will be confined to the second count. This is a count for conspiracy, and sets forth not only the unlawful means by which the accused proposed to accomplish their purpose, but also their overt acts. It was unnecessary to set forth these overt acts, for without alleging them they might be proved as matter in aggravation of the character of the conspiracy, or as evidence of the conspiracy itself. The conspiracy alleged is a conspiracy to cheat and defraud Pease out of his property. What was done in pursuance of the conspiracy is really of no consequence; they are not sought to be charged for the actual cheating and defrauding, for the offence is complete when and as soon as the agreement or conspiracy is entered into. The gist of the offense charged is not the cheating and defrauding, but the *conspiracy* or agreement to cheat and defraud."

The defendants further asked the court to charge the jury that, "in order to sustain the complaint the state must prove that the thing out of which Pease is alleged to have been cheated had some value, and in the absence of such proof there could be no cheating and no fraud, and the defendants ought not to be convicted." But the court did not so charge, but charged that, the gist of the complaint being the con-

spiracy, there could be a conviction without reference to the value of the property sought to be obtained.

The defendants further asked the court to charge the jury that "upon this complaint the defendants cannot be convicted of a conspiracy." But the court did not so charge, but charged that the second count was sufficient, and that on it the defendants might be so convicted; that it was a good count in conspiracy, notwithstanding the overt acts had been set out.

The jury returned a verdict of guilty against the defendants Bradley and Gager, and of not guilty in favor of the defendant Olmstead. Bradley and Gager moved for a new trial for error in the rulings and charge of the court, and also a motion in error.

*H. Willey* and *C. J. Cole*, in support of the motions.

*First.* The challenge to the array of jurors should have been sustained.

1. A juror is a public officer. 5 Bac. Abr., *Office and Officers, A;* Webster's and Worcester's Dictionaries, *Officer.* From a long time anterior to the adoption of our present constitution the policy of this state has been to appoint a body of men to act as jurors. Gen. Stat., 431. They are appointed under the authority of the state and are paid from the public funds.

2. The jury which tried this cause was not legally constituted, because on the first Monday of January, 1880, a body of jurors was chosen for the several towns in Hartford County to serve for one year. The act of 1880 attempted to substitute for them a new body of jurors from September 1st, 1880. This act did not attempt to increase the number of jurors, for the number remained the same; so it cannot be claimed that the new body of jurors is to be added to the old, and that together they are the jurors of the several towns. The legislature has no power to replace one set of officers by another. *State ex. rel. Birdsey* v. *Baldwin,* 45 Conn., 134.

3. The act is unconstitutional, because it provides that

"all jurors shall be electors not less than thirty years of age." Article 6th of the constitution of the state provides that "every elector shall be eligible to any office in this state, except in cases provided for in this constitution." The act is therefore in conflict with that section of the constitution.

4. The act is also unconstitutional because it provides "that no verdict shall be set aside on account of any irregularity in summoning the jury, or for want of qualifications of any juror;" while the constitution provides (Art. 1, sec. 9) that persons accused shall have a right to a trial "by an impartial jury," and (sec. 21) that "the right of trial by jury shall remain inviolate." This act provides that the jurors shall be taken from one class of electors, another class being excluded; that though the jury be summoned by a prejudiced officer in an improper manner, though the jurors be absolutely disqualified by relationship, interest, or prejudice, yet the party aggrieved shall have no remedy. Of what value is the constitutional provision that he shall have an impartial jury, if this statute is to be held valid which provides that he cannot take advantage of it?

6. The usual and only way to reach the defect is in the manner adopted in this case, by challenge to the array. *Colt* v. *Eves*, 12 Conn., 252; *State* v. *Wilson*, 38 id., 137.

*Second.* The court erred in overruling the demurrer to the complaint.

1. The first and third counts are clearly insufficient as counts for conspiracy. In sustaining those two counts as counts for conspiracy the court was clearly in error. (It is true that the judge partially overruled his own decision, but that was after evidence had been offered to the jury on all the counts.) *Lambert* v. *The People*, 9 Cowen, 578; *Commonwealth* v. *Hunt*, 4 Met., 111; *Commonwealth* v. *Eastman*, 1 Cush., 226; *Commonwealth* v. *Shedd*, 7 id., 514; *Commonwealth* v. *Wallace*, 16 Gray, 223. If not good as counts for conspiracy, they may be good counts for the constituent misdemeanor charged to have been committed. 2 Swift's Dig., 330.

2.   If the second count is a count for conspiracy, as held by the court below, it is also a count for obtaining property by false pretences, and a count for uttering or publishing "a false, forged and pretended instrument," namely, a false and forged deed of Lyon to Pease.   If the court below was correct we have this condition of things in one count: 1st, a charge of conspiracy; 2d, a charge of obtaining property by false pretenses—a statute offence; 3d, a charge of uttering or publishing as true a false and forged deed, a felony by statute and at common law.

3.   It is charged that the defendants knowingly uttered a forged deed in pursuance of the conspiracy.   If the conspiracy had been to utter a forged deed and by that means defraud Pease, setting forth the deed, the charge would be good, possibly, for conspiracy, but when the pleader went beyond that and alleged the uttering of the forged deed and the obtaining of Pease's property by means of it, the lesser crime of conspiracy would be merged not only in the felony, but also in the higher statutory crime of obtaining property by means of false pretenses.   An unexecuted conspiracy is a mere intent, and it is an exceptional case where the law punishes a mere unexecuted intent.   It is a self-evident proposition that an intention to do a thing is less criminal in the eye of the law than the doing of it.

4.   The doctrine of merger is correctly stated as follows: "When a felony or misdemeanor is in fact committed, a conspiracy to commit such a felony or misdemeanor cannot be indicted and punished as a distinct offence.   An intent to commit a misdemeanor, manifested by some overt act, is a misdemeanor, but if the intent be carried into execution, the offender can be punished for but one offence, and the greater crime absorbs the less."   2 Swift Dig., 330; *Commonwealth* v. *Kingsbury*, 5 Mass., 106.   The mere agreement or conspiracy was a simple misdemeanor.   The procuring the property by false pretenses in the manner charged, if criminal, was a high crime or misdemeanor at the least, possibly a felony; in either case of a higher grade than the mere conspiracy.   The punishment fixed by statute is greater.

Uttering a forged deed is clearly a felony. 4 Black. Com., 249. The conspiracy therefore was merged.

5. In a charge for obtaining property by false pretenses, the mis-statements, and to whom made, must be particularly set forth, that the court may be able to judge whether the facts relied upon constitute the crime charged. Gen. Stat., 525, note; *State* v. *Jackson*, 39 Conn., 229. In a charge of conspiracy to obtain property by false pretenses the same particularity is required; therefore it follows that it is not enough for the pleader to allege that a certain deed was "false, forged, and pretended," for those are conclusions from facts. The pleader should have alleged all the facts, and the legal conclusion from these facts; the court could then have determined whether the conclusions were correct. *Hartman* v. *The Commonwealth*, 5 Penn. St., 65.

6. The information is bad also for duplicity, for if any one crime is sufficiently pleaded, there are two or three others equally well pleaded. A count in an indictment which charges two distinct offenses is bad, and the defendant on demurrer can defeat it. 1 Whart. Am. Crim. Law, §381; 1 Arch. Crim. Prac. & Pl., (Pomeroy ed.) 299 and note on p. 300; *People* v. *Wright*, 9 Wend., 193.

7. An indictment for obtaining real estate by false pretenses does not lie. *State* v. *Burrows*, 11 Ired. Law, 477; *Commonwealth* v. *Woodrun*, 4 Penn. L. Jour. Reps.; 207.

*Third.* The court erred in its rulings and charge.

1. The evidence of Plato, offered by the state after it had rested, was not admissible in the discretion of the court. The accused was entitled to know when the case of the state was closed. It would have been inadmissible at any stage of the case, because there was nothing in the complaint to warrant it.

2. The court erred in charging that the second count was for conspiracy. A more manifest error than is contained in the following clause of the charge could hardly be imagined, namely—"What was done in pursuance of the conspiracy is really of no consequence; they are not sought to be charged

for the actual cheating and defrauding, for the offense is complete when and as soon as the agreement or conspiracy is entered into." True, if the offense had stopped there, but is it really of no consequence what is done in pursuance of a conspiracy? Suppose two or three persons combine together to murder, is what they do in pursuance of the conspiracy of no consequence? Does the murder amount to nothing? Does the conviction and punishment for conspiracy end it? Or is the conspiracy merged and terminated as a distinctive crime?

3. The court was asked to charge that there could be no conviction without some proof of value; the court refused, but charged " that the gist of the complaint being the conspiracy, there could be a conviction without reference to the value of the property sought to be obtained." But if there was no value there could be no fraud; if no fraud, then one element is out, and there could be no conspiracy to commit a fraud. The statute provides that the defrauding shall be out of some valuable thing; yet when we have found that the property which Pease exchanged and out of which he was alleged to be defrauded, was encumbered for $500 more than it was worth,—was worse than worthless,—and the state offers no evidence upon the subject, the court brushes it aside by saying substantially—"this charge being for conspiracy, the value of the property had nothing to do with it."

*Fourth.* The verdict is irregular, and should be set aside on motion in arrest. It is a general one of guilty on all the counts. If the rulings of the court below were correct, the jury should have rendered a verdict of not guilty of obtaining the property by false pretenses, and not guilty of uttering a forged note, and " guilty of the conspiracy." *Commonwealth* v. *Hunt,* 4 Met., 124.

*W. Hamersley,* State's Attorney, *contra.*

CARPENTER, J. The defendants were arraigned on a criminal charge. As the jury were about to be impaneled their counsel challenged the array on the ground that the act of

1880, providing a different method of selecting jurors, was unconstitutional ; at least, that it was inoperative during the year 1880.

The only ground of challenge to the array at common law is partiality, corruption or fraud, or some defect in making the returns. Swift says (Digest, Vol. 2, p. 429) : " But our mode of selecting jurors is such that there is no room for any partiality or corruption in the returning officers, so that it would be difficult to imagine any ground for a challenge to the array." The ground of challenge here is not partiality or fraud in the officers of the law, but the law itself and the power of the legislature are challenged. We know of no precedent for this, and it is doubtful whether it can be done. If it cannot be done, for that reason the challenge was properly disposed of by the Superior Court.

But as it is not desirable to dispose of an important question like this on technical grounds alone we are disposed to treat the challenge as a challenge for cause of each juror and consider the questions discussed on their merits. It is claimed that the statute, notwithstanding its terms providing that it should take effect September 1st, 1880, was inoperative during that year, for the reason that jurors had been selected under the old law for that year and that it was not competent for the legislature to set them aside and select others.

This claim is based on the assumption that jurors are public officers and cannot in this way be legislated out of office during the term. We think this assumption is not well founded. Although jurors serve the public and perform important duties in the administration of justice, it does not follow that they are officers within the meaning of the constitution and law. Many persons perform duties of a public nature who are not officers. Witnesses, persons assisting sheriffs and other peace officers, persons in the military service, and the like. While the duties thus performed relate to and promote the public weal, yet the persons performing them lack some of the more important official elements. A juror summoned to attend court has no certain

term of office. He may be discharged immediately with or without his consent. He may be excused from serving in any or in all cases at the will of either party, and when the term ends ordinarily his duties as a juror end for the year. The oath administered to him is not that prescribed by the constitution and laws for public officers, but is special, and is usually administered in each case, and has no binding force after the case is disposed of. These considerations serve to illustrate in some measure the difference between jurors and public officers.

But the defendants must go further and insist, not only that a juror in the discharge of his duty is an officer, but that an elector as soon as his name is in the jury box is also an officer. A very brief consideration of our method of selecting persons to serve as jurors will show the absurdity of this claim.

Out of the large body of citizens liable to be jurors a few are selected whose names are put in the jury boxes of the several towns, and from these persons required to serve from time to time are designated by chance. Whether any person thus selected will be called into actual service or not is uncertain, as many are not drawn at all. The most that can be said of him is that he is liable to be called on, but this liability is not an office. As well might it be said that the liability to have his name put in the jury box is an office. It is hardly carrying the argument one step further, as it is a mere liability in either case, differing only in degree. We are now prepared to say without further argument that the act of 1880, which excused all persons from serving as jurors, whose names were in the jury boxes prior to September 1st of that year, violated no vested rights official or otherwise.

But it is said that the act is unconstitutional because it excludes all persons under thirty years of age from serving as jurors, while the constitution provides that " every elector shall be eligible to any office, &c."

What has already been said disposes of this question. But were it otherwise we are clearly of the opinion that the defendants have no cause of complaint so long as the persons

who served as jurors were legally qualified. It is no cause for complaint that other persons legally and constitutionally qualified were not permitted to serve.

The claim that the constitution is violated in the tenth section of the act, which provides that no verdict shall be set aside for irregularity in summoning the jury or for want of qualifications, need not be considered, for, as we have seen, there is no irregularity growing out of the alleged defect in the law, and there is no pretense that the jurors who served were disqualified.

The information contains three counts. The defendants demurred and the demurrer was overruled. On the trial the jury were instructed that the first and third counts were insufficient, and their deliberations were confined to the second count. A verdict was rendered against the defendants, and they now claim that the court erred in overruling the demurrer to the second count.

That count alleges the conspiracy, the means contemplated, the acts done, and that the object was accomplished. It is claimed that it charges three offenses, conspiracy, obtaining property by false pretenses and forgery. We do not so understand it. There is no charge in legal and sufficient form of forgery. The instrument alleged to be forged is not set out, nor is it otherwise described with that particularity which the law requires. It is simply stated in general terms "that said Lyon had well and truly executed a certain deed to said Pease of said real estate, which pretended deed the defendants then and there showed and delivered to said Pease as and for a good and sufficient conveyance to him of said last named real estate, but which deed said attorney says was only a false, fraudulent, forged and pretended instrument, and did thereby induce said Pease to execute, etc." And that, not for the purpose of charging forgery, but for the purpose of showing the means resorted to for the purpose of defrauding Pease. It is one of the overt acts alleged to have been committed in pursuance of the conspiracy. As such it is unobjectionable.

It is not a new thing for conspirators to contemplate a

crime as a means to the end sought.    In such cases, although the crime intended is actually committed, the conspiracy remains.    Whether the parties can be punished for both is another question ;  they cannot complain if they are legally punished for the conspiracy.

Nor is the count defective for the reason that it sets out the fact that the parties accomplished their object, and thus substantially charges the offense of obtaining money by false pretenses.    The information in this respect follows the authorized precedents.    2 Swift's Digest, 839 *et seq.;* Wharton's Precedents of Indictments and Pleas, 613, 614, 615. The English courts held that it was not necessary to allege the overt acts and the consummation of the thing intended ; holding it sufficient to allege the conspiracy in general terms.    That practice has been followed to some extent in this country, but the more usual  course is  to allege, as was done in this case, the acts done pursuant to the conspiracy and the result.

The State having rested its case, the defendants offered in evidence a deed  of a certain tract of  land.    The  State objected to the deed on the ground that there was no proof of the signature.    The defendants then offered B. H. Plato to prove his own signature.    On the cross-examination the State's Attorney asked the following questions :  " Where is the property  situated  that  is  described  in  the  deed ? " " What was it, what did it consist of ? "    To both of which the defendants objected, but the court overruled the objection.

If it be conceded that the questions were not strictly cross-interrogatories, we are inclined to think that they were admissible in rebuttal, especially if the answers tended, as they might have done, to show that the deed was inoperative, and that it was within the discretionary power of the court to allow them on the cross-examination.

The court did not err in refusing to charge as requested by the defendants, that " the gist of the complaint is the cheating and defrauding by means of the representations and pretenses alleged in the complaint," and charging that

" the gist of the offense was the conspiracy or agreement to cheat and defraud." What has been said as to the sufficiency of the second count is a sufficient answer to this objection.

The defendants requested the court to charge. that there could be no conviction without some proof of value. The court charged " that the gist of the complaint being the conspiracy, there could be a conviction without reference to the value of the property sought to be obtained." We see no objection to this. The property sought to be obtained was the equity of redemption in certain real estate. Presumptively it had some value. If its apparent value was sufficient to induce the defendants to enter into a conspiracy to obtain it, the jury were justified in finding the criminal intent without proof of actual value. In this offense (conspiracy to cheat and defraud) the value of the thing sought, provided it be property, is immaterial, except as it may have a bearing upon the question of guilt or innocence.

There is no error ; and a new trial is denied.

In this opinion the other judges concurred.