## LONG *et al.* v. ROSE *et al.*

The Political Code, § 223, declares that "Persons holding any office of profit or trust under the government of the United States (other than that of postmaster), or of either of the several States, or of any foreign State," are "held and deemed ineligible to hold any civil office in this State." *Held,* that this did not render one who held the office of solicitor of the county court of a county ineligible to hold the office of mayor of a municipal corporation located in such county; nor did it render persons who respectively held the offices of county treasurer and member of the board of education of the county ineligible to hold the offices of aldermen of such municipal corporation.

Submitted February 13,—Decided March 10, 1909.

Quo warranto. Before Judge Parker. Camden superior court. December 14, 1908.

J. M. Long and others made application for leave to file an information in the nature of a quo warranto against D. P. Rose, W. H. Mullin, and J. R. Bachlott, in order to inquire into their right to hold the offices of mayor and aldermen of the City of St. Marys. Permission being granted to file the information, the relators alleged as follows: They are residents, citizens, and tax-payers of St. Marys. Under and by virtue of the charter of that city, on or about the first Monday in April, 1908, the Governor of the State appointed and commissioned respondent Rose as mayor of the city and respondents Mullin and Bachlott as aldermen, each for the term of one year. Each of them accepted the appointment and was duly commissioned, taking the oath of office and assuming and entering upon the discharge of the duties thereof, and is still doing so. They are. without legal warrant or authority for so doing, each of them being ineligible to hold the office for the reasons hereafter stated: "Relators charge that respondent D. P. Rose is holding the office of mayor of said city without legal warrant and authority so to do, and is ineligible to hold said office, for the reason that at the time of his appointment and commission and at the time of his taking the oath and assuming the discharge of the duties of said office of mayor he was and is now commissioned, qualified, and exercising the duties of and holding an office of profit and trust under the government of the State of Georgia, to wit, solicitor of the county court of Camden." Mullin is holding the office of alderman of said city without legal warrant or authority so to do, and is ineligible to hold said office, for the reason that at the time of his appointment and commission, and at the time of his taking the oath and assuming the discharge of the duties of said office, he was and is now commissioned, qualified, and exercising the duties of and holding an office of profit and trust under the government of the State of Georgia, to wit, member of the board of education of Camden county. Respondent Bachlott is holding the office of alderman of said city without legal warrant and authority so to do, and is ineligible to hold said office, for the reason that at the time of his appointment and commission, and at the time of his taking the oath and assuming the discharge of the duties of said office, he was and is now commissioned, qualified, and exercising the du-

ties of and holding an office of profit and trust under the government of the State of Georgia, to wit, treasurer of Camden county. For these reasons respondents are mere de facto officials of the city, and relators pray that they be ousted. The respondents answered, admitting that they were appointed to the offices of mayor and aldermen respectively, and that they were discharging the duties thereof, but denied that they were ineligible to do so. They admitted also holding the other offices described in the information. They alleged that respondent Rose was appointed mayor subsequently to his appointment as solicitor, and that he was no longer solicitor of the county court. They also alleged that each of them was a resident and freeholder of the city at the time of his appointment and qualification, and so remained. By consent of counsel for both parties the case was heard before the judge of the superior court at chambers on the petition and answer, there being no issue of fact. He denied the prayer of the petition and dismissed the case. The relators excepted.

*W. G. Brantley* and *Brantley & Butts,* for plaintiff.

*Osborne & Lawrence,* for defendant.

ATKINSON, J.   At common law there was no inhibition against the holding of more than one office, provided they were not inconsistent with each other. In many of the United States there are constitutional provisions or legislative acts on this subject, limiting the power to hold offices or prohibiting the holding of certain different offices at the same time, or rendering certain persons holding offices of a particular character ineligible to offices of another described character. In this State the Political Code, §223, declares as follows: "The following persons are held and deemed ineligible to hold any civil office in this State, and the existence of either of the following states of facts is a sufficient reason for vacating any office held by such person, but the acts of such person, while holding a commission, are valid as the acts of an officer de facto, viz.:   .   .   4. *Holding other offices.*   Persons holding any office of profit or trust under the government of the United States (other than that of postmaster), or of either of the several States, or of any foreign State." This first appeared codified in the original code which took effect January 1, 1863. By act approved September 11, 1891 (Acts 1890-1, p. 102), an act was passed, the caption of which was: "An act to prohibit in this State the hold-

ing of more than one county office by one person, at any one time, and for other purposes." It is now embodied in the Political Code, §224, as follows: "No person shall hold, in any manner whatever, or be commissioned to hold at one time, more than one county office, except by special enactment of the legislature heretofore or hereafter made; nor shall any commissioned officer be deputy for any other commissioned officer, except by such special enactment." On behalf of the plaintiffs in error it is contended, that the purpose of paragraph 4 of section 223 of the Political Code was to prevent one person from absorbing and holding more offices than one, and to prevent the evils which might accrue from professional office-seeking; that the State of Georgia is one of the several States of the Union, and the expression, "or of either of the several States," is sufficiently broad to cover this State; that the section referred to renders ineligible "to hold any civil office in this State" any person holding any office of profit or trust under the government of this State; that each of the offices of mayor and aldermen in the city of St. Marys falls within the designation, "any civil office in this State;" and therefore that the respondents, who held respectively the offices of solicitor of the county court, member of the board of education of the county, and county treasurer, and thus held an office of profit or trust under the government of this State, were ineligible to the offices of mayor and aldermen. On the other hand it is contended, that the purpose of the code paragraph just cited was not to prevent any person in this State from holding more than one office in it, but was to prevent persons who held any office of profit or trust under other governments, and owed allegiance to them, from becoming officials of this State, and thus having a divided allegiance to two masters; that the words "or of either of the several States" meant either of the several States other than this State, and did not include the State of Georgia; and also that, if it were otherwise, the statement that the persons described should be "ineligible to hold any civil office in this State" had reference to civil offices of a State character, and did not include mere officials of municipal corporations; that officers of the latter character did not hold a "civil office in this State," within the meaning of the code section to which reference has been made; and that the holding of the offices of solicitor of the county court, member of the board of education of the county, and treasurer of

the county, whether they would have rendered the respondents ineligible to hold another State office or county office or not, did not make them ineligible to hold the positions of mayor and aldermen in St. Marys.

We think it requires no argument to show that the solicitor of the county court, member of the board of education, and treasurer of the county are offices of trust, and, if they have attached to them salaries or fees, also offices of profit. It is unnecessary to the determination in this case to decide the exact meaning of the expression, "or of either of the several States," as used in the code; because, whichever of the two contentions above stated should be maintained, the result in this case would be the same. If it should be conceded that the expression "either of the several States," was intended to and did include the State of Georgia, and that thereby persons holding any office of profit and trust under the government of this State were rendered ineligible to hold any civil office in this State, the words employed in the statute declaring ineligibility to hold "any civil office in this State" do not refer to municipal officers such as mayor and aldermen. In State *v.* Wilmington City Council, 3 Har. (Del.) 294, it was held that "The office of treasurer of a public corporation (such as the City of Wilmington) is not a 'civil office in this State' within the meaning of the constitutional exclusion of the clergy from civil office." In the body of the opinion Bayard, Chief Justice, said: "The question presented in the second point is, whether the office of treasurer in this corporation comes within the true meaning and import of the terms 'civil office in the State,' as used in the constitution. The word State has two meanings, and is used in both of them, in different parts of that instrument. In one sense it signifies the *territory* inhabited by the people; in the other it means the *body politic* inhabiting the territory, so that the words 'civil office in the State' may mean either civil office within the territory, or civil office in the frame of government or political organization which it was the business of the convention to establish. As the purpose of a constitution is to establish the principles of government for the community as a body politic, without any particular reference to the territory which they inhabit, the primary and leading sense in which the term State is used is that of the body politic." It must be remembered, too, in construing the

language used, that this was not a conferring or enabling act, but a law limiting the right to hold office or rendering ineligible certain persons who otherwise might have lawfully done so; and in construing its terms consideration should be given to that fact in determining the legislative purpose and how far it was intended to exclude municipal officers not necessarily falling within the meaning of the words employed.

In Pennsylvania the constitution contained a provision that "no member of Congress from this State, nor any person holding, or exercising, any office of trust or profit under the United States, shall, at the same time, hold or exercise the office of judge, secretary, treasurer, prothonotary, register of wills, recorder of deeds, sheriff, or any office in this State, to which a salary is by law annexed, or any other office which future legislatures shall declare incompatible with offices or appointments under the United States." Mr. Dallas was appointed by the President of the United States as attorney for the eastern district of Pennsylvania. The governor also appointed him recorder of the City of Philadelphia. Application was made to the Supreme Court for leave to file an information in the nature of a writ of quo warranto, to inquire by what authority the defendant exercised the office of recorder. The court held that the recorder of the City of Philadelphia was not a judge within the meaning of the 8th section of the 2nd article of the constitution of the State of Pennsylvania, the section and article above quoted. 4 Dallas (Penn.), 218 (1 L. ed. 812). As there reported, Chief Justice Shippen said that "although the recorder of the City of Philadelphia possesses some powers, and performs some duties, of a judicial nature, he is not a judge, within the terms, spirit, and meaning of the 8th section of the 2d article of the constitution." The same case is more fully reported in 3 Yeates (Penn.), 300. In State v. Kirk, 44 Ind. 401 (15 Am. R. 239), the following ruling was made: "The office of councilman in a city is an office purely and wholly municipal in its character, and such officer has no duties to perform under the general laws of the State. The office of councilman in a city, although a lucrative office in the ordinary sense of the words, is not a lucrative office within the meaning of the ninth section of the second article of the constitution, which provides that no person shall hold more than one lucrative office at the same

time." The constitution of Indiana contained a provision that "No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any other office of trust or profit under the State, other than a judicial office." Under the provisions of a general law of that State the mayor of a city was also a judge of the city court, and had jurisdiction to try and determine suits founded on contracts or torts, when the debt or damages claimed or the value of the property sought to be recovered did not exceed $100; to issue a venire, impanel a jury, receive the verdict, grant a new trial, or enter judgment thereon; to issue writs of replevin, attachments for property, and ne exeat, capias ad respondendum, capias ad satisfaciendum. In State transactions his jurisdiction was coextensive with the county, and he had exclusive jurisdiction where the fine assessed could not exceed $3, and concurrent jurisdiction to try and determine all cases punishable by fine only, or by fine with discretion to imprison. It was held that all this jurisdiction, which was not merely incidental to his government of the city, but was a direct conference of additional powers, made him a judicial officer, and he was therefore ineligible to hold the office of sheriff. It was held, however, that "the executive and administrative duties of the mayor of a city, under the act of 1857, are not within the executive and administrative departments of the State government, as established by the constitution. In respect to such duties, the mayor is merely an officer of a municipal corporation; and he may discharge such duties and his judicial functions at the same time, without violating section 1 of article 3 of the constitution" (in regard to keeping separate the three departments of government). Waldo *v.* Wallace, 12 Ind. 569. Perkins, J., concurred in the view that the mayor of Indianapolis, while presiding in the city court, under the laws creating it and conferring jurisdiction upon it, was a judicial officer; but in reference to the fact that the State government and the municipal government are not identical, he said: "The powers which are exercised by a city government are, it thus appears, superadded to those exercised by the State in the same locality. The people of towns and cities are governed that much more than are the people of the State generally. This is deemed a necessary incident to a dense population." A similar ruling, though less clearly expressed, was made in Howard *v.* Shoe-

maker, 35 Ind. 111. The language there used in reference to lucra-tive offices might be subject to misconstruction, but it was explained in the opinion in State *v.* Kirk, supra, where the same Justice who wrote the opinion in the former case, said: "It was held by this court, in Howard *v.* Shoemaker, supra, that the office of mayor of a city was a lucrative office within the meaning of the 9th section of article 2 of the constitution, not because he received compensation for the discharge of such of his duties as were purely municipal in character, but for the reason that he had duties to perform, under the laws of the State, aside from those which are judicial and those of a purely ministerial character," etc. The idea expressed by Perkins, J., in the quotation above made, is recognized in the decisions of this State, where it has been held that an affray within the limits of a municipal corporation might at once constitute an offense against the municipal laws touching disorderly conduct and also an offense against the State laws in regard to assault and battery or assault with intent to murder, and in other similar instances, thus recognizing the distinction between the general State laws and government and local corporate laws and government, although the municipality could not punish for an infraction of the State law.

The only ground on which it was asserted that one of the respondents was ineligible to hold the office of mayor of St. Marys was that he was solicitor of the county court. No contention was raised or urged that the mayor had duties other than those incident to that office, or of a character similar to those described in the Indiana cases above cited, or under the State government, and not such as might properly be exercised by a mayor as incidental to the duties of that office, and was therefore ineligible. The same is true of the other two respondents; the sole claim in regard to them being that they were ineligible to be appointed aldermen of St. Marys, because one of them was a member of the board of education of the county and the other was county treasurer.

We have not discussed the doctrine of inconsistent offices, because the pleadings do not raise the question, but the contention is that the defendants were ineligible to hold the second offices. If two offices are merely inconsistent, the acceptance of the second operates as a resignation or relinquishment of the first. If the statute renders the holder of one office ineligible to the second, it

prevents his lawfully holding the second at all, and does not operate as a relinquishment of the first. *McWilliams* v. *Neal,* 130 *Ga.* 733 (61 S. E. 721). The mere fact that the mayor and aldermen of St. Marys are appointed by the Governor of the State does not render them officers of the State, that being only a mode of selection of the officials of the municipality under the terms of its charter.

In the light of what has been said above and of the issues raised by the pleadings, there was no error on the part of the court in denying the prayer of the relators to oust the respondents from the offices of mayor and aldermen of the municipality of St. Marys.

<div align="center">

*Judgment affirmed. All the Justices concur.*