McDUFFIE *v.* PERKERSON *et al.*

No. 9780. NOVEMBER 14, 1933. REHEARING DENIED FEBRUARY 19, 1934.

*P. C. McDuffie* and *Madison Richardson,* for plaintiff.

*John A. Boykin, solicitor-general, Marion Smith, J. A. Branch,* and *Edgar Watkins,* for defendant.

GILBERT, J. On May 17, 1903, the plaintiff as a citizen and

taxpayer applied to the superior court for leave to file an information in the nature of quo warranto. Because of disqualification, the judge of that court to whom the application was tendered designated the judge of the Griffin Circuit to preside, who refused to sanction the application and denied leave to file the information. The bill of exceptions contains two assignments of error. The first complains that on a hearing, in response to an order requiring the petitioner "to show cause why he should be permitted to file said application and information," the court, against the objection of petitioner that the same were immaterial and irrelevant to the matters then before the court, permitted the reading of two affidavits and an unverified statement of Hon. Virlyn B. Moore, a judge of Fulton superior court. The second complains of the judgment denying the application for leave to file the information. The application was directed against Perkerson and others, who, it was alleged, were "performing the duties of grand jurors at the May-June, 1933, term of Fulton superior court."

The facts on which the petitioner bases his right to the writ, as set forth in his application, are: that on or about April 14, 1933, Hon. V. B. Moore, a judge of Fulton superior court, caused the jury-boxes, both grand and petit, to be brought into his court-room; that he unlocked them, broke the seals, and drew from them from time to time hands full of the small jury tickets therein, each containing the name and address of a person eligible for jury service; that the tickets were not drawn one by one; that the judge did not count the tickets or determine the number removed by him, but handed them to H. G. Bradley, who took them and purported to list the names thereon, and did list 240 names; that at no time during the proceeding, which consumed about two hours, was any announcement made by the judge or any attaché that a grand jury for the May-June term of the court was about to be or was being drawn; that the judge did not ascertain or cause the name of any person appearing on such tickets to be read aloud; that he did not cause each name as drawn to be returned to apartment 2 of the jury-box; that he did not write down or cause the writing in his presence of the names on the tickets drawn; that except for opening the box, breaking the seal, and handing the tickets in handfuls to Bradley, the judge did not participate in the drawing and did not determine whether the list of names prepared by Bradley

was a true and complete list of the names appearing on the tickets drawn, but instead gave his attention exclusively to the trial of a criminal case which was proceeding before him; that on April 20 Bradley presented to the judge a typewritten list purporting to be a true and complete list of the names drawn on April 14; that, relying solely on the list so prepared by Bradley as true and complete, and without himself knowing that the list was true and complete, the judge certified the same; that by this method it was placed within the power of Bradley to omit from the list names actually drawn, or to switch names from the petit-jury to the grand-jury list, or vice versa, or to insert the names of persons not in fact drawn, and during the interval between the drawing and the certification it was placed within the power of Bradley or other persons to determine affiliations, connections, and bias of persons appearing on the list; that Bradley is a bailiff appointed by the board of commissioners of Fulton County, and his salary is fixed by the board; that Perkerson, foreman of the grand jury, is a relative of a county commissioner who was then under indictment, and of other persons employed by the county; that Perkerson was foreman of a grand jury in or about 1931, and if the requirements of the Penal Code, § 823, had been observed, he would not have been again drawn for grand-jury service for about sixteen years; that it was peculiarly important to the citizens and taxpayers to have a legally constituted grand jury; that the March-April term grand jury had set up a citizens committee under the Penal Code, § 841, to report to the next grand jury; that the county commissioners had given a written promise to the March-April term grand jury to institute reforms which would effect a saving of half a million dollars in county expenditures, and it was important to have a legally constituted grand jury in office to see that the promised reforms were carried out; that the March-April term grand jury had set forth in its general presentments serious abuses in the superior and municipal courts of the county, and had recommended immediate investigation by the next grand jury; that the May-June term grand jury had returned many indictments which would be void, and great expense to the taxpayers would be incurred in trying cases under such indictments; that the March-April term grand jury was, through refusal of the solicitor-general to draw, at its request, indictments charging county commissioners with non-performance of official duty and misap-

propriation of county funds, hindered and delayed in its investigations; that on April 12 the five judges of the superior court signed an order informing the grand jury that such expressions on their part were not only improper but tended to disqualify them to act on such matters if legally brought before them; that on April 14, the day the purported grand jury for the May-June term was drawn, one of the judges of the superior court rebuked the March-April term grand jury and warned them, in future deliberations, "to be sure that you hold yourselves within the limitations prescribed by law;" that the facts set out by the March-April term grand jury as to non-performance of official duty and misappropriation of county funds were notorious, and it was the right of the taxpayers to have in office a legally constituted grand jury to act thereon; that the county commissioners in their sole discretion fix part of the salaries of the judges of Fulton superior court; that they had caused large additions to be made to such salaries paid by the State; and that named judges had reciprocated by appointing a county commissioner to lucrative employments in connection with trust estates within the control of the court, and therefore that the judges of the court were disqualified.

■■ Headnotes one and two need not be elaborated.

■■ The controlling question is whether or not grand jurors are public officers within the purview of the law of this State in respect to the remedy by writ of quo warranto or information in the nature of quo warranto. Under the Civil Code, § 5451, the writ of quo warranto applies only where the right of any person to a "public office" is involved, and in section 5454 the remedy applies where civil officers are concerned. The words "civil officers" are obviously used in contradistinction to military officers. If grand jurors are public officers, the remedy sought in this case is applicable; otherwise it is not. If the remedy is not applicable, it is needless to discuss any other question in the case. Incidentally it may be said that it is also unnecessary to discuss applicability of the writ sought to offices other than public offices. The controlling question has never been decided by this court. Numerous criteria have been mentioned by text-writers and in decided cases, which should be considered in determining whether a person is an officer. No one of them is conclusive in every case, and taken altogether the question is frequently left in doubt. In this State it has been held that

"An individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law, is a public officer." *Bradford* v. *Justices, 33 Ga.* 332; *Polk* v. *James,* 68 *Ga.* 128 (2); *Wiley* v. *Sparta,* 154 *Ga.* 1, 14 (114 S. E. 45, 25 A. L. R. 1342); 46 C. J. 928, § 19. In 22 R. C. L. 372, § 2, it is said: "Since one who holds an office is an 'officer,' it becomes necessary to ascertain what, properly considered, is an 'office.' The definitions of this word, as given by the text-writers and courts, are not in entire harmony. Blackstone (2 Com. 36) defines an office as the right to exercise a public or private employment, and to take the fees or emoluments thereunto belonging. Thus it has been said that every one who is appointed to discharge a public duty, and who receives a compensation in whatever shape, whether from the crown or otherwise, is a public officer. A distinction is drawn between public and private officers, the former being those whose functions and duties concern the public. The term 'public officer' involves the idea of tenure, duration, fees or emoluments, and powers, as well as that of duty. These ideas or elements can not properly be separated and each considered abstractly. All, taken together, constitute an office. But it is not necessary that an office should have all of the above-named characteristics, although it must possess more than one of them, and the mere fact that it concerns the public will not constitute it an office." In 46 C. J. 929, § 21 c, it is said: "The term 'public office' embraces the ideas of tenure and of duration or continuance; hence an important distinguishing characteristic of an officer is that the duties to be performed by him are of a permanent character as opposed to duties which are occasional, transient, and incidental. But it is held that this element is not essential where the other qualifications of officers are present. Public employments are public offices, notwithstanding the instability of the tenure by which the incumbent holds." So we find that even that test is not conclusive. The decision in State ex rel. Barney *v.* Hawkins, 79 Mont. 506 (257 Pac. 411, 53 A. L. R. 583), dealt with the question of what are the essential elements to constitute public office. The court discussed the question elaborately and assembled a great number of cases throughout the country dealing with that question. Also, the case has been thoroughly annotated in A. L. R. and reference is made thereto rather than to collect all

of the same authorities in this opinion. In Wyman's Administrative Law, 163, § 44, it is said: "A public office, then, is the right, authority, and duty conferred by law by which for a given period, either fixed by law or through the pleasure of the creating power of government, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The warrant to exercise powers is conferred, not by a contract, but by the law. It finds its source and limitation in some act of expression of governmental power. Oath, salary, operation, scope of duties, are signs of the official status; but no one is essential. The essential thing is that in some way or other the officer is identified with the government."

In the light of what has been said in regard to the criteria for determining when one is a public officer, what is the legal status of a grand juror? His position is created by statute and under authority of the superior court, the latter being a creation of the constitution of Georgia. The constitution merely requires that grand juries be selected from "the most experienced, intelligent, and upright men." Civil Code (1910), § 6546. All persons, however, who perform duties in connection with the superior court, are not necessarily public officers. A grand juror receives compensation based upon the number of days in which the juror serves. He takes an oath required by law, and performs important pubic duties. All of these are consistent with the position or status of public officers. None of them are conclusive in determining such a status. The grand juror is identified with the government service, but that is not conclusive. The grand jury is an important part of the judicial system. As now constituted, the grand jury performs a service essential to the public in examining into county affairs and into infractions of the penal laws. It is under the direction and control of the judge of the superior court as to its time of functioning and adjournment, and the length of its service. In most of the counties of the State the superior court is required by law to hold at least two regular terms during the year, the dates being fixed by statute. In most of the counties the grand jury actually serves only a few days, ranging from two or three days to two or three weeks, and are dismissed for the term. In the more populous counties the number of terms range from four to six, and the sessions of the grand jury for any term of the court may be ended by

dismissal of the grand jury for the term. Grand jurors are appointed neither by the Governor nor by the judge of the superior court nor by any one else. Neither are they elected by vote of the people nor in any other way. Their names are drawn from a box provided by law; and whether one set of persons whose names are in the grand-jury box, or another, shall constitute the grand jury chosen for a given term is purely a matter of chance. Whether they shall serve at all after their names are drawn is a matter of uncertainty, depending upon whether excuses are rendered and granted or whether more than the maximum number allowed to serve respond and remain on the list after all requests to be excused have been acted upon. After being sworn, the tenure or continuity is still a matter of uncertainty. A juror may be excused by the court on sufficient excuse rendered at any time, or, as stated above, the grand jury as a whole may be discharged at any time by the presiding judge.

Viewing the question as a whole, it is obvious that for a large part of each year in most counties no persons are serving as grand jurors. We do not overlook the fact that the judge of the superior court may recall grand jurors who have been discharged or adjourned for the term; but that lies within the discretion of the judge. In two other States it has been directly held that grand jurors are not public officers. In State v. Graham, 79 S. C. 116 (60 S. E. 431), the Supreme Court held that "the position of grand jurors is not an office of 'honor and profit' within the contemplation of the constitution." In Bradley v. State, 48 Conn. 535, the Supreme Court held: "Although jurors serve the public and perform important duties in the administration of justice, it does not follow that they are officers within the meaning of the constitution and law. Many persons perform duties of a public nature who are not officers. Witnesses, persons assisting sheriffs and other peace officers, persons in the military service, and the like. While the duties thus performed relate to and promote the public weal, yet the persons performing them lack some of the more important elements. A juror summoned to attend court has no certain term of office. He may be discharged immediately with or without his consent. He may be excused from serving in any or in all cases at the will of either party, and when the term ends ordinarily his duties as a juror end for the year. The oath administered to him

is not that prescribed by the constitution and laws for public officers, but is special, and is usually administered in each case, and has no binding force after the case is disposed of. These considerations serve to illustrate in some measure the difference between jurors and public officers." In this State members of the grand jury do not take the same oath prescribed by law for public officers. Official oaths provided for all "public officers" are to be found in the Civil Code (1910), § 269 et seq. The oath prescribed for grand jurors is found in the Penal Code (1910), § 829. The oaths of public officials, under the Civil Code, § 271, may be taken "before any officer authorized by law to administer an oath." The oaths must be written out and signed by the persons taking them, and in other particulars the oaths of public officials differ from the oath required of the grand jury. Among other differences one is that the grand jury must be sworn in open court in the presence of the presiding judge.

Grand jurors are not legislative nor executive officers. If officeholders, they are judicial officers. Their duties are neither ministerial nor judicial. While performing certain duties essential to the administration of justice, they are not judicial officers. The grand jury, as an institution, comes to us from the common law and is of very ancient origin, but their powers are greatly modified. The abuses to prevent which the grand jury was originally brought into existence as a part of the English system of jurisprudence have largely disappeared, but there remain many important public duties which are required of them. Among the important duties devolving upon a grand jury is the investigation of the conduct of public officers in the performance of their duty, and to indict all persons within their jurisdiction who have violated criminal statutes. The Supreme Court of the United States has declared that "the power and duty of the grand jury to investigate is original and complete, and may be exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper." Ex parte United States, 287 U. S. 241, 250 (53 Sup. Ct. 129), and cit. Mr. Mechem, in his work on Public Offices and Officers, states that "jurors in their deliberations and verdicts" are exempt from civil liabilities for their "official actions," based upon their status as "quasi-judicial officers." He says: "The power and duty to exercise judgment and discretion is not conferred upon those of-

ficers alone who sit as judges in courts. There is still a large class of officers whose duties lie wholly outside of the domain of courts of justice, or concern the business of courts only incidentally or occasionally, and who are yet called upon by law to exercise, for the benefit of the public or of individuals, powers very nearly akin to those of judges in the courts. The powers conferred upon this class of officers are often, to distinguish them from those of judges proper, termed quasi-judicial or discretionary. 'Quasi-judicial functions,' says Mr. Bishop, 'are those which lie midway between the judicial and ministerial ones.'" In that class he places also arbitrators, tax-assessors, town boards, and numerous others of similar character. Authorities cited by plaintiff in his learned and well-prepared brief are Hale v. Henkel, 201 U. S. 43 (26 Sup. Ct. 370), and Turpen v. Booth, 56 Cal. 65 (38 Am. R. 48), neither of which requires a different judgment.

In this State the grand jury is lacking in the element of tenure and duration which must exist in order to qualify its members as public officers. That being true, the judgment of the trial court is affirmed, without deciding other issues raised.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., dissenting. I can not concur in the judgment of the superior court denying the petition of Mr. McDuffie for leave to file an information in the nature of a quo warranto in this case; certainly not for the reason upon which the ruling of the majority of the court is based, to wit, that a grand juror is not a public officer. I am of the opinion that the reason why the question has not been heretofore presented to this court rests on the fact that at common law and in the early history of this State there was never any question that a grand juror was a public officer. Certain essentials of the qualifications are stated by the text-book writers to constitute a public office, or the duties of a public officer; but it is not essential that all of the characteristics which may under differing circumstances unite to create a specific·public office must necessarily join to create a public officer, though of a different kind. It is stated in 46 C. J. 928, § 19: "There are numerous criteria which have been resorted to in determining whether a person is an officer, although no single one is in every case conclusive. It is not necessary that all characteristics of an office, or an officer, found in their various definitions, shall be

present in order to constitute one an officer." In 46 C. J. 929-30, § 21, it is said: "The term 'public office' embraces the ideas of tenure and of duration or continuance; hence, an important distinguishing characteristic of an officer is that the duties to be performed by him are of a permanent character as opposed to duties which are occasional, transient, and incidental. But it is held that this element is not essential where the other qualifications of officers are present. Public employments are public offices notwithstanding the instability of the tenure by which the incumbent holds." This court has held that a commercial notary public is a public officer. *Smith* v. *Meador*, 74 *Ga*. 416 (58 Am. R. 438). While the exact question as to whether a grand juror is a public officer has not been ruled by this court, the court has frequently held that the fact that the public duties of one appointed by any branch of government to discharge public functions are restricted to very narrow limits does not prevent such appointee from being a public officer. "Certainly, where an individual has been appointed or elected in a manner prescribed by law, has a designation or title given him by law, and exercises functions concerning the public, assigned to him by law, he must be regarded as a public officer. It can make no difference whether he be commissioned by the chief executive officer with the authentication of the seal of State or not. Where that is given, it is but evidence of the title to the office. This evidence may in some cases be of greater, and in others of less solemnity." *Bradford* v. *Justices*, 33 *Ga*. 332, 336, 337. "An office is a public station or employment conferred by the appointment of the government. And any man is a public officer who is appointed by government, and has any duty to perform concerning the public; nor is he any the less a public officer because his authority or duty is confined to narrow limits." *Polk* v. *James*, 68 *Ga*. 128, 131. "An individual who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law, is a public officer. . . An office is a public station or employment conferred by the appointment of the government. Any one is a public officer, who is appointed by the government and has any duty to perform concerning the public. Nor does it matter that his authority or duty is confined to very narrow limits." *Templeman* v. *Jeffries*, 172 *Ga*. 895, 901 (159 S. E. 248). "A public office is the

right, authority, and duty created or conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." Mechem on Public Offices, § 1. A grand juror is at times at least a quasi-judicial officer. It is expressly provided in the Penal Code (1910), § 296, that should there be presented for investigation by the grand jury a charge that any public official entrusted with public funds has been guilty of malpractice, the grand jury should hear both sides of the case, and should according to its judgment as a judicial tribunal decide whether there shall be a true bill or a no bill returned. Thus in a number of cases the express provision of our law may render the prosecution and conviction of a public officer impossible by a return of two no bills. Since the ordinaries of counties, or the board of county commissioners who take their place in many counties of this State, are directly amenable to the examination, inspection, criticism and accusation of the grand jury, I can not see that they are not officers of the court, officers in behalf of the citizens of the county, and therefore not private officials, but absolutely public officers.