MORGAN v. CROW.

No. 11489. SEPTEMBER 17, 1936. REHEARING DENIED OCTOBER 16, 1936.

F. M. Gleason, for plaintiff.

Joseph C. Caldwell and McClure & McClure, for defendant.

GILBERT, Justice. B. G. Morgan, as a citizen and taxpayer, instituted quo warranto proceedings to test the title of Roy Crow to the office of justice of the peace. The petition alleged that Crow was ineligible to hold the office, because, on retiring from the office of mayor of the City of Rossville, he failed to pay over $382.15, the money of said city held by him. The fact of indebtedness being admitted by Crow, he executed, on August 21, 1926, his promissory note, jointly with two other persons, for the amount due, which note was accepted by the City of Rossville. The note has remained unpaid. Crow's term of office ended on December 31, 1924. These facts are alleged in the petition, and are admitted by the demurrer of the defendant. The petition also alleged as a conclusion of law, based upon the facts, that Crow unlawfully converted the $382.15 to his own use and now holds the same; that, being the holder of public funds, he is ineligible to hold the office of justice of the peace; and that he is holding the office in violation of the constitution of Georgia (Code, § 2-901), and of the statute (§ 89-101, par. 2), citing also §§ 89-301, 89-302. The exception is to a judgment sustaining the general and special demurrers to the petition, the grounds of demurrer being that no cause of action was set out; that allega-

tions that the respondent had violated certain provisions of the constitution of Georgia were mere conclusions, and did not show any violation; that the petition and information showed upon its face that the City of Rossville accepted the joint note of the respondent and others in full settlement of any sum in the hands of respondent belonging to the city and held by the respondent contrary to law, and showed that he is simply indebted to the city and holds, contrary to law, no money belonging to the city; that certain allegations as to amounts alleged to have been collected by him, converted by him to his own use, and held by him contrary to law, were too general, vague, and indefinite for him to answer; and that the allegation that he still held, contrary to law, funds belonging to the city was a mere conclusion; that the money alleged to have been converted by him is alleged to have been converted eleven years before the filing of the petition, and three and a half years of his office as justice of the peace are shown to have elapsed, and respondent has only six months more to serve in such office; and that the petitioner has been guilty of laches, as is shown on the face of the petition.

The question to be determined is whether the conclusions of law, as alleged in the petition, are correct. The court is indebted to counsel for concise and excellent briefs covering the points of law involved. We will now consider the provisions of law above mentioned. It is declared in the constitution, art. 2, sec. 4, par. 1 (Code § 2-901): "No person who is the holder of any public money, contrary to law, shall be eligible to any office in this State until the same is accounted for and paid into the Treasury." A similar provision, though not the same, occurs in the constitution adopted in 1798, art. 4, sec. 6 (McElreath on the Constitution, § 407), and in all subsequently adopted constitutions of this State. The words "contrary to law" first appeared in the constitution ratified in 1877. Code of 1882, § 5035. It will aid in the solution of the problem to determine what "public money" and what "Treasury" are meant. "Eligibility to hold office is the general rule. Ineligibility is the exception. The right to hold office is a political privilege." *Avery* v. *Bower,* 170 *Ga.* 202, 204 (152 S. E. 239). See also *Overton* v. *Gandy,* 170 *Ga.* 562, 567 (153 S. E. 520); *Beazley* v. *Lunceford,* 178 *Ga.* 683, 684 (173 S. E. 852). In *Avery* v. *Bower* it was said: "A statute

pleaded as a barrier to eligibility will be strictly construed and strictly applied, and the petition, with respect to a demurrer, will be construed most strongly against the pleader. These are well-established and proper rules." To determine the class of persons ineligible to hold "any office in this State" under the constitutional provision above quoted, and in arriving at the meaning of "public money" and "Treasury," it will also be profitable to examine into the expression "any office in this State," as used in the context. In *Long* v. *Rose,* 132 *Ga.* 288, 292 (64 S. E. 84), this court had before it the question whether or not one who held the office of solicitor of a county court was eligible to hold the office of mayor of a municipal corporation located in that county. This question arose in connection with the Code provisions as to ineligibility, which we shall discuss hereinafter. In the opinion, quoting from State *v.* Wilmington City Council, 3 Har. (Del.) 294, it was said: "The question presented in the second point is, whether the office of treasurer in this corporation comes within the true meaning and import of the terms 'civil office in this State,' as used in the constitution. The word State has two meanings, and is used in both of them, in different parts of the instrument. In one sense it signifies the *territory* inhabited by the people; in the other it means the *body politic* inhabiting the territory, so that the words 'civil office in this State' may mean either civil office within the territory, or civil office in the frame of government or political organization which it was the business of the convention to establish. As the purpose of a constitution is to establish the principles of government for the community as a body politic, without any particular reference to the territory which they inhabit, the primary and leading sense in which the term State is used is that of the body politic." This reasoning, we think, applies to the provision of the constitution of 1877 (Code § 2-901), as to the words "any office in this State" and to the same words in the constitution of 1798, art. 4, sec. 6, where a provision similar to that in the present constitution, but without the words "contrary to law," first appeared. The framers of the constitution in each instance had met to formulate the organic law of a State sovereignty, and must be said to have used the words "any office in this State" in the sense that the office was one included in the State as a body politic, rather than one within

the geographical State. By the same token the words "public money" must be construed to mean the public money which is due to the State, by whomsoever held, and the "Treasury" into which the same is to be paid must necessarily be construed to mean the State Treasury, that is, the Treasury of the State body politic. In the constitutional provision, therefore, the declared ineligibility is manifestly against those unlawfully holding public money which is due the State and to be paid into the State Treasury, as distinguished from other money and other depositories. The use of the capital "T" and the singular noun Treasury also lends strength to this view.

But we are not left to depend solely upon the consideration of the constitutional provision. After ratification of the constitution of 1798 the General Assembly in 1823 (Ga. Laws 1823, p. 37; Cobb's Digest, 209) passed an act providing that "No Collector, Sheriff, Coroner, Clerk of the Superior Court, Clerk of the Inferior Court, or any other person who is or may be a holder of public moneys and elected to any office shall be commissioned," unless he shall produce to the proper officer before whom he appears for qualification a certificate from the "Treasurer" of the State, countersigned by the Comptroller-General, certifying that he has accounted for and paid into the "Treasury" all sums for which he is accountable and liable. In the caption of the act it is stated that it is "to carry into effect the sixth section of the fourth article of the constitution" (of 1798). It is apparent from the caption that the General Assembly was fully aware of the constitutional provision which we have discussed above, and that the "public moneys" they had in mind were those belonging to the State and which were to be paid into the State Treasury. This is further apparent from the fact that the General Assembly stipulated that from the "Treasurer" of the State a certificate countersigned by the Comptroller-General must be obtained, and be produced to the proper officer by whom the officer elect is to be commissioned, such certificate certifying that he has accounted for and paid into the "Treasury" all sums for which he is accountable and liable.

In the first Code of this State (Code of 1863, § 125(2)) it was provided: "The following persons are held and deemed ineligible to hold any civil office in this State . . All holders

or receivers of public money of this State, or any county thereof, who have refused, when called upon, or failed after reasonable opportunity, to account for, and pay over the same to the *proper officer."* (Italics ours.) This provision has been contained in the subsequent Codes, and now appears in the Code of 1933 as § 89-101(2), except that in the first sentence the words "in this State" have been omitted after the words "civil office." This omission, however, can have no effect, because it is not the result of any specific legislation, but only the act of the codifiers in seeking to eliminate what they regard as useless words; and for a proper construction of the present Code section the language employed in the previous Codes may be resorted to. We are justified in assuming that the codifiers of the State Codes, and the General Assembly in enacting them, were familiar with the quoted constitutional provision of 1798, art. 4, sec. 6, and intended to declare ineligible to office, under the circumstances named, only those holding "public money" of this State, or any county thereof, which is to be paid to the "proper officer," the State treasurer or the county treasurer, as the case may be. It being assumed that the constitutional provision hereinbefore referred to, as well as the act of 1823, was familiar to the codifiers and the General Assembly enacting the Codes, it must be held that they meant to exclude from the operation of the statute holders of money not belonging to the State or any county thereof. This view is also supported by the principle expressed by the maxim, "Inclusio unius est exclusio alterius." Admittedly the money withheld in the present case is municipal, not State or county, money, and could not properly be paid into the State "Treasury" or the county treasury, and not such money as the holding thereof would disqualify one, formerly a mayor of a city, from holding the office of justice of the peace involved in the present controversy. Code §§ 89-301 and 89-302, to which we are cited by the plaintiff, have reference to the oaths required of public officers. The ruling on the applicability of these sections is necessarily controlled by what has been ruled as to the constitutional provisions and statutes herein discussed.

*Judgment affirmed. All the Justices concur.*

RUSSELL, Chief Justice, concurring specially. I thoroughly agree with what has been said by Mr. Justice Gilbert, in which he has lucidly stated all the prior legislation on this subject. However,

I think this is the proper time at which a ruling should be made upon other grounds of demurrer which were sustained; and for myself I approve the judgment of the lower court in sustaining the demurrers upon several other grounds stated therein.

### ON MOTION FOR REHEARING.

GILBERT, Justice. It is contended that the court overlooked other authorities holding that the words "public money," as referred to in the section of the constitution cited, mean State money or any county money. It is insisted that municipal funds are also public money. The court readily concedes that such funds are public money, and nothing in the opinion ruled to the contrary. The court merely ruled that the words as used in the constitution and in the statute, when the two are construed together, mean money of the State or any county thereof. There is a distinction between that ruling and a broad ruling that municipal funds are not public money. The motion for a rehearing is denied.