MORRIS *v.* HARTSFIELD, mayor, *et al.*

172

No. 12194. May 12, 1938.

*George G. Finch* and *Ben T. Huiet,* for plaintiff.
*Bond Almand, J. C. Murphy, C. S. Winn,* and *J. C. Savage,* for defendants.

JENKINS, Justice. This petition for mandamus was filed against the police committee of the City of Atlanta, to require reinstatement of the petitioner to the office of city policeman. There being no issues of fact, the case was tried by the judge on the pleadings, and a mandamus absolute was refused. On December 3, 1931, the petitioner was convicted of murder, with a recommendation to mercy, and sentenced to life imprisonment; and after a first new trial, he was again convicted, with the same verdict and sentence. Under the city charter, patrolmen were to serve "during good behavior" to be judged by the police committee, who were empowered to suspend or remove. On December 3, 1931, without notice to or hearing of the petitioner, the committee made this entry on their minutes: "Patrolman W. T. Morris having been convicted of a felony, he is dropped from the force." On December 20, 1935, during service of the sentence, the Governor then in office commuted it to "present" service. On September 3, 1937, the succeeding Governor granted to the petitioner "a full pardon . . restoring his citizenship." In the latter part of August, 1937, the petitioner made request of the committee to be restored to his duties. On September 10, 1937, he filed his petition, con-

testing the legality of his removal, and seeking reinstatement. His contentions are that he was entitled thereto, because his removal was illegal on account of the absence of charges, notice, or hearing; and because the pardon blotted "out of existence the alleged guilt, so that in the eye of the law [he] is as innocent as though he had never been convicted."

■ Irrespective of whether or not the provisions of the Code, § 89-101, par. 3, referring to ineligibility to hold any "civil office" by any person "convicted and sentenced finally for any felony," and of § 89-501, pars. 4, 7, referring to the vacating of "all offices in the State" by "voluntary act . . of the incumbent" rendering himself ineligible and "by abandoning the office and ceasing to perform its duties, or either," have application to a municipal office such as is here involved (see, in this connection, *Long* v. *Rose,* 132 *Ga.* 288, 290, 64 S. E. 84; *Morgan* v. *Crow,* 183 *Ga.* 147, 149, 187 S. E. 840; *Brewer* v. *Johnson,* 184 *Ga.* 806 (3), 808, 193 S. E. 778; *Phillips* v. *Jefferson,* 13 *Ga. App.* 376, 79 S. E. 222; State *v.* Knoxville, 166 Tenn. 530, 64 S. W. (2d) 7; State *v.* Fousek, 91 Mont. 448, 8 Pac. (2d) 791, 84 A. L. R. 303; 46 C. J. 989, 990) ; and consequently whether or not the petitioner under the express provisions of such statutes was automatically removed from office without any notice being given or hearing had, since the city authorities could not inquire into the validity or propriety of such conviction by a court of competent jurisdiction and his resulting imprisonment, any notice or hearing had by them for the purpose of showing the admitted fact of his final conviction and his incarceration would have been futile and wholly useless to the petitioner. Accordingly, the summary action of the city authorities in taking cognizance of the admitted fact that the petitioner had been convicted of a felony involving moral turpitude, with a sentence of life imprisonment, and of the fact that the service of such sentence was incompatible with service on the police force, would not afford any ground for his present petition for reinstatement after his imprisonment had terminated by commutation to four years of previous service and subsequent pardon and restoration to civil rights.

■ Under the theory of the petitioner that he remained in office throughout the four-year period of legal imprisonment, his failure, for nearly six years after his conviction and removal from

office, to file the instant petition to contest the validity of the removal, and without any other effort for more than five years to be reinstated, even though after four years he was released from imprisonment by commutation to that service, authorized a finding that such delay in filing the petition constituted such gross laches as would debar his present right to proceed. See 38 C. J. 831-833, and cit. For this additional reason the court did not err in refusing the mandamus.

■ While the grant of a pardon restores one to full rights of citizenship (Code, § 89-101), including the right to hold public office, and operates to remove all blot and stain growing out of a previous conviction of a felony involving moral turpitude, it does not operate to confer or restore a public office which was previously held, but which on account of the previous conviction and sentence was necessarily relinquished. See, in this connection, *Holloway* v. *Holloway*, 126 *Ga.* 459 (2), 461 (55 S. E. 191; 7 L. R. A. (N. S.) 272, 115 Am. St. R. 102, 7 Ann. Cas. 1164) ; State *v.* Hazzard, 139 Wash. 487 (247 Pac. 957, 47 A. L. R. 538, 542, and notes) ; 46 C. J. 1193, §§ 32, 33, 1196, § 38, and cit.

■ The court did not err in refusing a mandamus absolute.
*Judgment affirmed. All the Justices concur.*