SHEFFIELD *v.* STATE SCHOOL BLDG. AUTHORITY *et al.*

No. 17682.   Argued November 14, 1951—Decided January 14, 1952.

576

578

*Robert Culpepper Jr.*, for plaintiff in error.

*Paul Webb, Solicitor-General, G. Arthur Howell Jr., Elbert Tuttle, Sumter M. Kelley, Eugene Cook, Attorney-General, M. H. Blackshear Jr., Deputy Assistant Attorney-General*, and *George E. Sims, Assistant Attorney-General*, contra.

DUCKWORTH, Chief Justice. ■ ■ A major attack is here made upon the entire plan including the act, the revenue bonds from the sale of which funds are obtained with which to finance

the construction of the school buildings provided for, and the lease contracts by which the Authority leases the buildings to the county boards of education; and the attack is predicated upon debt limitations and inhibitions contained in the clauses of the Constitution specified in the statement of facts. We shall therefore, in this division of our opinion, consider the entire field of constitutional references to inhibitions and limitations upon public debt. We observe at the outset that all attacks in this category are predicated upon language, in the clauses of the Constitution relied upon, expressly forbidding or limiting or restricting to prescribed procedures public debts. And we observe also that these attacks assume that the constitutional clauses relied upon as they now appear in the Constitution of 1945 must receive the same construction as was given to them by this court in decisions such as those in *City Council of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696 (32 S. E. 907), and *Renfroe* v. *City of Atlanta,* 140 *Ga.* 81 (78 S. E. 449), while they were a part of the Constitution of 1877; and they further assume that the provisions of Art. 7, Sec. 6, Par. 1 of the Constitution of 1945 do not alter the meaning of the clauses relied upon, since it was held by this court in *DeJarnette* v. *Hospital Authority of Albany,* 195 *Ga.* 189 (23 S. E. 2d, 716), that the debt limitation provided by the clauses here relied upon, while a part of the Constitution of 1877, was not altered by the amendment thereto, which was, in substance, the provisions of what now appears as Art. 7, Sec. 6, Par. 1 of the present Constitution (Code, Ann., § 2-5901).

In order that the ground be completely clear of collateral issues, we consider first the decision in the *DeJarnette* case, supra. The ruling there was expressly based upon two considerations that could not apply here. Those considerations were as follows: (1) Since the provisions of what is now Art. 7, Sec. 6, Par. 1 were brought into the Constitution of 1877 by an amendment, the content of the amendment must be construed by applying the universal rule which requires that the amendment be given a construction that will harmonize with existing provisions of the Constitution; and (2) the amendment did not even purport to amend or change the debt limitation clause of the Constitution but, instead, was expressly made an amendment or

alteration of the clause relating to powers of counties to collect taxes. As applied in the present case, Art. 7, Sec. 6, Par. 1 stands as a separate and original clause of the Constitution of 1945. This recital of the factual difference clearly demonstrates that the decision in the *DeJarnette* case, supra, is wholly irrelevant and inapplicable here. This entire plan of securing school buildings is bottomed upon Art. 7, Sec. 6, Par. 1 (a) and (b) of the Constitution of 1945. There the Constitution plainly and unmistakably empowers the State, State institutions, municipalities, and counties to contract for any period not exceeding 50 years with each other or with any public agency, public corporation or authority, "for the use by such subdivision or the residents thereof of any facilities or services" of the State, State institution, municipality, county, public agency, public corporation or authority, provided such contract deals with activities which such subdivisions are by law authorized to undertake. And municipalities and counties are empowered in connection with such contracts to convey to public agencies, public corporations or authorities existing facilities operated by such municipalities and counties for the benefit of the residents thereof, provided such facilities are to be used by such grantee for the same purposes. The State School Building Authority Act repeatedly and meticulously declares that nothing authorized thereunder shall, directly or indirectly, place any obligation or debt upon the State or require the State to levy a tax or make an appropriation to satisfy any obligation of the Authority or the school boards or anyone else therein dealt with, and requires that the revenue bonds issued by the Authority must contain a recital showing the complete immunity of the State from liability thereunder. This plain and unmistakable content of the law, together with the indisputable fact that the lease contract and the revenue bonds completely conform thereto, should put at rest without further discussion all contentions that a State debt is created or assumed, or that a donation or gratuity is made by the State in violation of the various clauses of the Constitution which are here invoked. Beyond question there is no violation of the Constitution insofar as the State is concerned by the act or any of the proceedings taken thereunder. Therefore, the decision in *State Ports Authority* v. *Arnall*, 201 *Ga.* 713 (41 S. E. 2d, 246),

holding that a State debt was therein created in violation of the constitutional inhibition' (Code, Ann., § 2-5601), has no application here.

But, as relates to the counties, the lease contracts are debts prohibited by the Constitution, under Code (Ann.) § 2-6001 as that clause appeared in the previous Constitution when Art. 7, Sec. 6, Par. 1 (a) and (b) was not an original part of that Constitution; but the two clauses are now original portions of the Constitution of 1945, and as such they are of equal dignity and effect. They are indeed completely harmonious and are so declared by Code (Ann.) § 2-6001 in the following words, "except as in this Constitution provided for." This quoted language lifts out of the restrictions and limitations provided in that clause the full content of Art. 7, Sec. 6, Par. 1 as the constitutional authorization of debt not prohibited by the limitation and inhibition therein contained. Although the constitutional provision upon which the act and all proceedings taken thereunder are based does not expressly authorize a county board of education as such to enter rental contracts, it does expressly authorize counties to do so, and, under repeated rulings of this court, such contracts by the county boards of education are the corporate actions of the counties. *Smith* v. *Board of Education of Washington County*, 153 *Ga.* 758 (113 S. E. 147); *Board of Education of Baker County* v. *Hall*, 189 *Ga.* 615 (7 S. E. 2d, 183); *Board of Education of Wilcox County* v. *Board of Com'rs of Roads and Revenues of Wilcox County*, 201 *Ga.* 815 (41 S. E. 2d, 398). In *Smith* v. *Board of Education of Washington County*, supra, it was said, "Under the law the county acts through its board of commissioners of roads and revenue in matters of finance, construction of roads, bridges and the like. In matters of education the county acts through its board of education. When the board of commissioners of roads and revenue acts upon matters lawfully within their jurisdiction, it is the county acting 'by corporate authority.' When the board of education acts upon matters lawfully within its jurisdiction, it is the county acting through 'its corporate authority'." Therefore the County Board of Education of Baker County was by Art. 7, Sec. 6, Par. 1 authorized to make the lease contract here assailed.

We therefore rule that the lease contract, the revenue bonds,

and the State School Building Authority Act herein involved are all authorized by Art. 7, Sec. 6, Par. 1 of the Constitution, and that none of them constitutes a debt in violation of other provisions of the Constitution.

■ Section 14 of the State School Building Authority Act, supra, and section 11 of the Minimum Foundation Act (Ga. L. 1949, pp. 1406, 1412), are assailed upon the ground that they attempt to vest legislative powers in the State Board of Education, and offend the Constitution (Code, Ann., §§ 2-1301, 2-123) which vests all legislative powers in the General Assembly and commands that the legislative, executive, and judicial powers remain forever separate and distinct. This complaint is so overwhelmingly refuted by the following statutes and decisions that we deem it sufficient merely to cite them without comment. Code (Ann. Supp.), §§ 32-408, 32-420 (Ga. L. 1937, pp. 864, 866; Ga. L. 1945, p. 200); *Georgia Railroad* v. *Smith*, 70 *Ga.* 694; *Southern Ry. Co.* v. *Melton*, 133 *Ga.* 277 (65 S. E. 665); *Mosley* v. *Garrett*, 182 *Ga.* 810 (187 S. E. 20); *Knight* v. *Wingate*, 205 *Ga.* 133 (52 S. E. 2d, 604); *Atkins* v. *Manning*, 206 *Ga.* 219 (56 S. E. 2d, 260); *Hunt* v. *Glenn*, 206 *Ga.* 664 (58 S. E. 2d, 137). There being no delegation of legislative functions by either of the sections here assailed, they are constitutional and valid as against this attack.

■ Section 21 of the State School Building Authority Act, supra, expressly exempts the property of the Authority therein created from all taxation, and it is contended that this exemption constitutes a donation or a gratuity in violation of the Constitution (Code, Ann., § 2-5402), and that it offends the Constitution (Code, Ann., § 2-5404) which declares that all laws exempting property from taxation other than the property therein enumerated are void. Among the properties enumerated by the clause of the Constitution last cited which the legislature is authorized to exempt from taxation are "all public properties" and "all institutions of purely public charity." Unless the property of the Authority can be properly placed in one of these classes, the attack must be sustained. It is simply beyond the power of the legislature, regardless of the merits of a given case, to grant tax exemptions beyond those specified by the Constitution. Although the Authority is empowered to own and use properties for public-

school purposes, it is, nevertheless, the owner of that property and, under the ruling made in *State of Georgia* v. *Regents of the University System,* 179 *Ga.* 210 (175 S. E. 567), the Authority is not "the State, or a part of the State, or an agency of the State." Therefore the property exempt is not public property as contemplated by the Constitution. The fact that the property is devoted exclusively to public purposes would not make it public property and authorize the legislature to exempt it from taxation. *Board of Trustees, Gate City Guard* v. *City of Atlanta,* 113 *Ga.* 883 (39 S. E. 394); *Davis* v. *City of Atlanta,* 206 *Ga.* 652 (58 S. E. 2d, 140). We therefore must find constitutional support for the exemption granted in the fact that the Authority is an "institution of purely public charity" in contemplation of the Constitution if it be sustained. In *Williamson* v. *Housing Authority of Augusta,* 186 *Ga.* 673, 689 (199 S. E. 43), an elaborate discussion of the legal meaning of "charity" is found, and it was there said, "The test is whether the property itself is 'dedicated to charity and used exclusively' as an institution of purely public charity. 'The exemption from taxation of institutions of public charity, provided for by the Constitution, is of such institutions as property not as persons,—the physical things, not the ideal institutions'." The exemption there of the properties of the Housing Authority was held constitutional upon the basis that it was an institution of purely public charity. On the authority of that decision we hold that the exemption here is valid; that the properties of the Authority are devoted exclusively to public charity as contemplated by the Constitution.

■ ■ Finally, the intervention alleges that the Authority created by the act has not been legally organized and, hence, that all of its actions are illegal. This complaint is based upon the fact that the Governor appointed Honorable Fred Hand, the Speaker of the House of Representatives, as one of the three members which the law empowers the Governor to appoint, and that Mr. Hand was a member of the General Assembly which enacted the law creating the office, and his appointment was made during the term in which the office was created, thus offending the Constitution (Code, Ann., § 2-1606). The clause of the Constitution relied upon forbids the appointment to an

office having any emolument annexed thereto of a member of the General Assembly without his first resigning from the Assembly, or to any civil office created during his term in the legislature. Since the act expressly declares that the members shall receive no compensation for their services, the office is not one having any emolument annexed thereto, and therefore is not included in the first constitutional inhibition. It remains to be determined whether or not the office is a civil office in contemplation of the Constitution. There are numerous decisions from other jurisdictions defining the term "civil office." See 7 Words & Phrases, p. 326; 42 Am. Jur. 932, § 66. And for a rather general discussion concerning the term "civil office," see *McWilliams* v. *Neal,* 130 *Ga.* 733 (61 S. E. 721); *McDuffie* v. *Perkerson,* 178 *Ga.* 230 (173 S. E. 151); *Morgan* v. *Crow,* 183 *Ga.* 147 (187 S. E. 840). To be a civil office, there must be governmental functions that are not military to be performed. This act declares in section 21 that the corporate purpose of the Authority is to benefit the people of the State, and that the purpose is a public one, and that the Authority will be performing an essential governmental function in the exercise of the powers conferred upon it by the act. We are not precluded by this legislative interpretation of its own act. *McCutcheon* v. *Smith,* 199 *Ga.* 685 (35 S. E. 2d, 144). In *State of Georgia* v. *Regents of the University System,* supra, this court held that the Board of Regents was not the State, was not a part of the State, and was not an agency of the State. The Authority here stands on a par with the Board of Regents. And the membership to which Speaker Hand was appointed does not involve governmental functions. It is simply a plan whereby the Authority provides school buildings which the school authorities, in the performance of governmental functions, may by lease contract secure for the use of the public schools. We therefore hold that the appointment of Speaker Hand was not to a civil office as contemplated by the Constitution, and his appointment thereto does not offend the Constitution (Code, Ann., § 2-1606) as contended.

The foregoing rulings will decide adversely to the intervenor each and every assault made upon the act, the lease contracts, and the revenue bonds here involved. It follows that the court

did not err in any ruling complained of or in rendering the judgment of validation.

*Judgment affirmed. All the Justices concur. Wyatt, J., concurs specially.*

WYATT, Justice, concurring specially. I concur in the judgment in this case solely for the reason that I am bound by former decisions of this court.