20119. SIGMAN *et al. v.* BRUNSWICK PORT AUTHORITY *et al.*

HAWKINS, Justice. The exception here is to a judgment sustaining a general demurrer to a petition brought by W. H. Sigman and Freeman Darby, as citizens and taxpayers, against the Brunswick Port Authority and the individual members thereof, to restrain and enjoin them from proceeding with the issuance and sale of revenue bonds, from incurring any further expense in connection therewith, and from demolishing certain buildings owned by the Authority in order that the Authority might construct certain described buildings and other described facilities upon this property as a part of its port facilities; which buildings and facilities it proposes to lease to Bestwall Gypsum Company for a period of 25 years, the

lessee to pay an annual rental sufficient to amortize the cost of said buildings and facilities, to pay the interest and incidental expenses accruing in the operation of the lease, and all expenses of maintaining and operating the buildings and facilities, including insurance and taxes, plus $12,000 per year, no expenditures to be made by the Authority on account of such buildings and facilities during the term of the lease. The Authority proposes to issue revenue bonds not to exceed $3,500,000 to pay for such facilities, which bonds will be payable solely from the aforesaid rentals. Under the terms of the lease, the lessee is to install such machinery and equipment as may be necessary in the handling, storing, and processing of some 300,000 tons of gypsum-bearing ore per annum, to be shipped to the Port of Brunswick from Nova Scotia, thus more than doubling the annual tonnage passing through the facilities of the port.

The validity of the act creating the Brunswick Port Authority (Ga. L. 1945, p. 1023, as amended by Ga. L. 1958, p. 82), and the proposed issuance of the revenue certificates or bonds, and the execution of the lease by the Authority are attacked as being unconstitutional upon the grounds: 1. The issuance of the revenue bonds pledges the credit of the State to the Authority and thence to the lessee of the proposed facilities, in violation of art. 7, sec. 3, par. 4 (Code, Ann., § 2-5604), which provides that "The credit of the State shall not be pledged or loaned to any individual, company, corporation or association." 2. The act exempts from taxation property not specifically authorized by the Constitution, and is violative of art. 7, sec. 1, par. 4 (Code, Ann., § 2-5404), which provides that "The General Assembly may, by law, exempt from taxation all public property; . . . all institutions of purely public charity"; and that "All laws exempting property from taxation, other than the property herein enumerated, shall be void." 3. Such exemption from taxation grants a donation or gratuity to the proposed lessee and is violative of art. 7, sec. 1, par. 2 of the Constitution (Code, Ann., § 2-5402), which provides that "The General Assembly shall not by vote, resolution or order, grant any donation or gratuity in favor of any person, corporation or association." 4. That the said act as amended, and particularly section 5 thereof, is violative of art. 7, sec. 7, par. 5 of the Constitution (Code,

Ann., § 2-6005), which limits the purposes for which revenue certificates may be issued by any county, municipal corporation, or political subdivision of the State to those specifically authorized by the "Revenue Certificate Laws of 1937" as amended by the act approved March 14, 1939. 5. That the foregoing Revenue Certificate Law of 1937, as amended by the act of 1939, is a general law, and the Brunswick Port Authority Act, and particularly section 3 thereof, is a special law and violative of art. 1, sec. 4, par. 1 of the Constitution (Code, Ann., § 2-401), which provides that "laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." 6. That the act approved February 21, 1958 (Ga. L. 1958, p. 82), is unconstitutional, null and void, because violative of art. 3, sec. 7, par. 15· of the Constitution (Code, Ann., § 2-1915), for the reason that it is a local act and the notice of intention to apply for such legislation attached to and made a part of the bill is not sufficient to give notice of the contents thereof as required by the aforesaid constitutional provision. *Held:*

1. Section 6 of the act creating the Brunswick Port Authority and authorizing the issuance of revenue bonds and the resolution by the Authority authorizing the issuance thereof provide: "Credit of State and Its Subdivisions Not Pledged. Revenue bonds issued under the provisions of this Act shall not be deemed to constitute a debt of the State of Georgia or a pledge of the faith and credit of the State or of the City of Brunswick or of the County of Glynn. Such bonds may have the property, real or personal, which may from time to time be owned by the Authority pledged as security for their payment but shall not directly or indirectly or contingently obligate the State or the City of Brunswick or the County of Glynn to levy or to pledge any form of taxation whatever therefor. All such revenue bonds shall contain recitals on their face covering the foregoing provisions of this section." That revenue bonds or certificates issued by a State Authority or instrumentality of the State under such provisions are not obligations or debts of the State, nor a pledge of the credit of the State, but are a corporate debt of the Authority, is conclusively settled by the decisions of this court in *Sheffield* v. *State School Building Authority,* 208 *Ga.* 575 (68 S. E. 2d 590), *McLucas* v. *State*

*Bridge Building Authority,* 210 *Ga.* 1 (77 S. E. 2d 531), *State of Ga.* v. *State Toll Bridge Authority,* 210 *Ga.* 690 (82 S. E. 2d 626), and *State of Ga.* v. *Ga. Rural Roads Authority,* 211 *Ga.* 808 (89 S. E. 2d 204).

2. The act of the General Asssembly as amended creating the Brunswick Port Authority and exempting its property and revenue bonds from taxation is not violative of art. 7, sec. 1, par. 4 of the Constitution (Code, Ann., § 2-5404), and such exemption does not grant a donation or gratuity in violation of art. 7, sec 1, par. 2 of the Constitution (Code, Ann., § 2-5402). No private interest exists in the property of the Authority. The members thereof may not use it for private gain or income. The Authority holds title only for the benefit of the State and the public, and the Authority is an instrumentality of the State or a subordinate public authority or corporation of the State. In *Williamson* v. *Housing Authority of Augusta,* 186 *Ga.* 673, 691 (199 S. E. 43), it is said: "If the project under attack is for public purposes, and the property about to be acquired by it is for public purposes, then the property may be exempted from taxation, and its bonds, being instrumentalities of government, are non-taxable. Property may be public property so as to come within the exemption from taxation although the legal title is not in the State, the county, or a municipality. Compare *Trustees of the Academy of Richmond County* v. *Augusta,* 90 *Ga.* 634 (17 S. E. 61, 20 L. R. A. 151). See also *Walden* v. *Whigham,* 120 *Ga.* 646 (48 S. E. 159). Public property, within the meaning of that clause of the Constitution which authorizes the General Assembly to exempt from taxation all public property, embraces only such property as is owned by the State, or some political division thereof, and title to which is vested directly in the State, or one of its subordinate political divisions, *or in some person holding exclusively for the benefit of the State, or a subordinate public corporation. Board of Trustees of Gate City Guard* v. *Atlanta,* 113 *Ga.* 883 (39 S. E. 394, 54 L. R. A. 806)." (Italics ours.) See also *McGinnis* v. *McKinnon,* 165 *Ga.* 713 (141 S. E. 910); *Swoger* v. *Glynn County,* 179 *Ga.* 768 (177 S. E. 723). Property used for the purpose of public convenience and welfare in the matters of public travel and transportation and to facilitate public transportation and as a dock or port operation, to provide buildings which the users

of the port may lease, and in which to store and process commodities transported by water, is in the aid of commerce, and is for the promotion of public transportation, public commerce, and general welfare, and may properly be classified as public property and therefore exempt from taxation.

3. Article 7, section 7, paragraph 5 of the Constitution (Code, Ann., § 2-6005), which limits the purposes for which revenue certificates may be issued to those specifically authorized by the Revenue Certificate Laws of 1937, as amended by the act of 1939, applies only to counties, municipalities, or other political subdivisions of the State, and not to the State or State Authority such as the one here involved, or the State School Building, Bridge Building, Toll Bridge, Rural Roads, or Hospital Authorities. Thus the act here involved does not offend this provision of the Constitution.

4. The Brunswick Port Authority act is not violative of art. 1, sec. 4, par. 1 of the Constitution (Code, Ann., § 2-401), which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The Revenue Certificate Law (Code, Ann., Chapter 87-8) does not purport to be a general law exhaustive of the purposes for which revenue bonds or certificates may be issued, for Code (Ann.) § 87-825 provides: "The powers conferred by this Chapter shall be in addition and supplemental to, and not in substitution for; and the limitations imposed by this Chapter shall not affect the powers conferred by any other general, special, or local law."

5. Attached to the enrolled Brunswick Port Authority Act of 1958 (Ga. L. 1958, pp. 82, 88) is the following notice, which is followed by the affidavit of both Glynn County Representatives in the General Assembly that such notice was published as required by art. 3, sec. 7, par. 15 of the Constitution (Code, Ann., § 2-1915), which provides that "No local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published" as therein required: "Notice is hereby given of my intention to introduce and apply for adoption of local legislation at the January-February, 1958, session of the General Assembly of Georgia, which local legislation will consist of a bill to amend or supplement Act No. 314 of the Laws of 1945 creating Brunswick Port Authority,

in such manner as to recognize said authority as a branch or instrumentality of the State of Georgia, to continue its existence and full powers, to grant it specific authority to enter into contracts with respect to the construction of various port and related facilities and the leasing and use thereof, to authorize the financing thereof, and to authorize the validation of the bond obligations and proceedings of said authority in the manner provided by law for the validation of revenue certificates." Conceding, but not holding, this to be a local bill, the publication of this notice was a sufficient compliance with the requirements of this constitutional provision. *Walker Electrical Co.* v. *Walton*, 203 *Ga.* 246, 251 (46 S. E. 2d 184); *Swiney* v. *City of Forest Park*, 211 *Ga.* 154 (84 S. E. 2d 573).

6. What is here held is not in conflict with the decisions of this court in *Beazley* v. *DeKalb County*, 210 *Ga.* 41 (77 S. E. 2d 740), and *Tippins* v. *Cobb County Parking Authority*, 213 *Ga.* 685 (100 S. E. 2d 893), for the reason that the Authorities there dealt with were County Authorities, and the activities in which they proposed to engage were not such as the counties themselves could carry on, but were such as are ordinarily carried on by private enterprise. Here, the acquisition, construction, maintenance, and operation of public ports, docks, wharves, and related facilities is a function ordinarily carried on by the State, or a State instrumentality, and a legitimate function of State government. Article 7, section 2, paragraph 1 of the Constitution of Georgia (Code, Ann., § 2-5501) authorizes the State to levy taxes to be used to construct and maintain State docks, and to promote natural resources of the State. That such is generally recognized as a legitimate function of State government, see 94 C. J. S. 566, § 1; City of Oakland *v.* Williams, 206 Cal. 315 (274 Pac. 328); Miller *v.* Greater Baton Rouge Port Commission, 225 La. 1095 (74 So. 2d 387, 391); Greater Baton Rouge Port Commission *v.* Watson, 224 La. 136 (68 So. 2d 901); North Carolina State Ports Authority *v.* First-Citizens Bank & Trust Co., 242 N. C. 416 (88 S. E. 2d 109).

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*

ARGUED JUNE 10, 1958—DECIDED JULY 11, 1958— REHEARING DENIED JULY 22, 1958.

*P. S. Ringel, William R. Killian,* for plaintiffs in error.

*Wm. G. Grant, John W. Sognier, Kennedy & Sognier, Griffin B. Bell, Pope B. McIntire, Spalding, Sibley, Troutman, Meadow & Smith,* for party at interest not party to record.

*Gowen, Conyers, Fendig & Dickey, Chas. L. Gowen, Troutman, Sams, Schroder & Lockerman, Henry B. Troutman, T. M. Smith, Jr., Tench C. Coxe,* contra.

*J. W. Smith,* for party at interest not party to record.

DUCKWORTH, Chief Justice, dissenting. I dissent from the majority ruling because, in my opinion, this is a plain case of lending the State's credit in violation of the Constitution. While we have upheld the validity of the Ports Authority which, in my opinion, encompasses the usual facilities to effectuate and insure successful operation of the port, nevertheless I can not accept what appears to me to be a strained construction of the term "port facilities" that will include the construction of a manufacturing plant, as is unquestionably undertaken in this case. We are not free to speculate that the building might be used for warehouse or other appropriate port purposes when we are told by the record in this case that it is the deliberate and positive intent to construct this building for the purpose of leasing it to a private individual to be used as a factory with the installation of necessary machinery to accomplish the intended purpose of processing goods. I can not be unmindful that perhaps within a hundred yards of this factory, financed by the State's credit and used by private individuals, there might well exist another similar plant, financed by private finances and subjected to State, county, and local taxes, which places the owner of such private enterprise at a definite disadvantage with his competitor, and this disadvantage is afforded that competitor by the State, which is solemnly charged by the first paragraph of the Constitution to protect persons and property, impartially and completely. I fear that this case marks the first dangerous step toward placing the State of Georgia in open competition with private enterprise, which is the very lifeblood of a free democracy.